IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT S. BLADES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 16-627-GMS |
| | ) |
| MOSAIC OF DELAWARE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

## I. INTRODUCTION

The plaintiff, Robert S. Blades ("Blades"), who proceeds *pro se*, filed this employment discrimination lawsuit on July 25, 2016, followed by an amended complaint on September 8, 2016. (D.I. 1, 4.)[1] He raises claims under Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, Titles I and V of the Americans with Disabilities Act of 1990 ("ADA), 42 U.S.C. §§ 12111, *et seq.* and § 12101, respectively, 42 U.S.C. § 1983 and § 1988, as well as supplemental claims under the Delaware Discrimination in Employment Act ("DDEA"), 19 Del. C. § 710(a)(1), the Delaware Workers' Compensation Act, 19 Del. C. § 2365, and breach of the covenant of good faith and fair dealing. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 13.) Blades opposes.

## II. BACKGROUND

Blades identifies as a Black American, not African American. Blades began his

---

[1] The court considers the amended complaint and its exhibits (D.I. 4) as the operative pleading. The original complaint (D.I. 1) named the following defendants: Mosaic of Delaware, Jill Turner, Laura Widger, and Chuck Sipe, all of whom it appears have been served. (*See* D.I. 5, 6, 7, 8.) The amended complaint at D.I. 4 adds a number of defendants none of whom have been served.

employment with the defendant Mosaic of Delaware ("Mosaic")[2] in March 2013. (D.I. 4, ¶ 3.) He was discharged on August 1, 2014. (D.I. 4, ex. A.) Blades filed a charge of discrimination on November 19, 2014, and received a notice of suit rights from the EEOC on April 26, 2016. (*Id.* at exs. A, C.)

Blades was supervised by the defendant Jill Turner ("Turner"), William Jenkins ("Jenkins"), and Tracy Martin ("Martin"). (*Id.* at ¶3.) On October 31, 2013, Blades was nominated for the quality service award for the month of November and, in December, he was told that he had been selected for the award. (D.I. 4, exs. E, J.) Blades received his performance evaluation from Turner on November 11, 2013. (D.I. 4 at ¶ 6, ex. F.) Blades alleges that Turner coerced him to initial and sign the document without giving him ample time to read or ask questions about the evaluation. (D.I. 4 at ¶ 6.) Blades refers to the unemployment practices as "blatant exploitation of [an] African American versus [a] Black American" and "social oppression." (*Id.*) Blades alleges that when Turner was asked by her supervisor why she had given a Black American low scores, Turner then "provided another discriminating evaluation to another staff [member]." (*Id.* at ¶ 7.)

Blades alleges that Turner gave preferential treatment to African Americans rather than Black Americans like himself. (*Id.* at ¶ 10.) He alleges that Turner's practices and her training provided a "social oppression" of an "ongoing pattern of misconduct" when she provided Blades a discriminatory evaluation because he is not of African descent. (*Id.* at ¶ 11.) Blades alleges that Turner also discriminated against him when she decreased his hours and denied him

---

[2]Mosaic is a faith-based, nonprofit, 501(c)(3) organization that serves people with intellectual disabilities. *See* http://www.mosaicinfo.org/location/mosaic-delaware (last visited Aug. 21, 2017).

2

overtime, and gave it to the African Americans. (*Id.*) The amended complaint alleges that Turner: (1) intentionally withheld two hours of pay from him; (2) did not discipline African American employees who were constantly late for work and falsified bloodwork monitors; (3) did not supervise African American employees who were cleaning mice infestation droppings in an individual's bedroom; (4) did not discipline a former African American for expressing himself in the logbook; and (5) provided African American employees extra hours of overtime so they could send money to their families in Africa. (*Id.*)

On December 16, 2013, Blades submitted an internal complaint addressed to Turner complaining of her disparate treatment, but she refused to address Blades' concerns, and she gave the internal complaint to management. (D.I. 4 at ¶ 13, ex K.) Blades was contacted to schedule an appointment to investigate the complaint, and later met with Mosaic executive director Chuck Sipe ("Sipe") and human resources manager Laura Widger ("Widger") to review the findings. (*Id.* at ¶ 16.) Blades concluded the investigation was prejudiced and biased and that the meeting was based on favoritism and negligent supervision. (*Id.* at ¶¶ 14, 16.) Blades alleges that after he submitted the complaint, Turner acted in a retaliatory and discriminatory manner when he received arbitrary and unsubstantiated write ups, Turner wrote derogatory and repetitive annoying comments in the log book, and she used his evaluations to harass him when she gave Blades another poor evaluation. (*Id.* at ¶ 21.)

On February 14, 2014, Blades applied for the position of direct support specialist. (D.I. 4, at ¶ 28, ex. O.) He and four females were interviewed for the position. (*Id.*) Blades alleges that during his interview, he was told that Mosaic was looking for a female to fill the position. (*Id.*)

3

Blades did not receive the position and alleges that a less qualified African American female was hired for the position. (*Id.*)

Blades alleges that on April 21, 2014, Turner gave him another biased evaluation. (D.I. 4 at ¶ 31, ex. Q.) Blades alleges that when he met with Turner and Widger to discuss the evaluation he also discussed the position he had applied for and was again told that Mosaic was looking for a female. (D.I. 4 at ¶ 31.) On April 22, 2014, Blades received a congratulatory letter from Sipe for achieving an "exceeds expectations" on his 2014 annual performance review. (D.I. 4, ex. Q.) On May 20, 2014, Blades received a written warning for insubordination "for expressing" himself in the log book. (D.I. 4 at ¶ 32, ex. R.) Blades appealed because he believed it was an unlawful employment practice of intentional discrimination, harassment, retaliation, conflict of interest, and bullying. (D.I. 4 at ¶ 32.) Mosaic upheld the corrective action for Blades' unprofessional communication with his supervisor. (D.I. 4 at ¶ 32, ex. R.) Blades alleges that Turner then retaliated against him by coercing someone to make a complaint against him while he was on vacation. (D.I. 4 at ¶ 32.)

On July 26, 2014, Blades suffered a work related injury to his right arm. (*Id.* at ¶42.) The next day, he treated his right arm with an ice pack, electrical heating pad, and electrotherapy (*Id.*) On July 28, 2014, Blades met with Turner to address a July 21, 2014 incident and during their conversation told her that he had injured his right shoulder. (*Id.* at ¶ 43.) The same day, he received monthly observation/document review notes from Turner, and Blades alleges that through the document, Turner continued to harass him by "providing repetitive annoying statements" he considered as "gross misconduct for falsifying documents." (*Id.* at ¶ 44, ex. T.) Blades worked while in pain on July 28, 2014 and, after his shift ended, he went to the

4

emergency room where he was diagnosed with biceps tendonitis. (D.I. 4 at ¶ 43, ex. U.) The physician excused Blades from work for two days. (*Id.*)

On July 29, 2014, Blades call Widger and left messages regarding his injuries, but she did not return his call that day. (D.I. 4 at ¶ 45.) He also scheduled a doctor's appointment for July 30, 2014, and at the appointment the physician diagnosed right rotator cuff tendinopathy and recommended physical therapy. (D.I. 4 at ¶ 45, ex. V.) Blades called Widger again on July 30, 2014, and left a message. (D.I. 45 at ¶ 46.)

The same day, Blades received a phone message from Mosaic's office manager, Maryann Ridall ("Ridall") who asked that he update his driver's license. (*Id.* at ¶ 47.) Blades told Ridall that he would be there before 5:00 p.m. (*Id.*) When Blades met with Ridall, he informed her that he had left messages for Widger regarding his injury and that Widger had not returned his calls. (*Id.* at ¶ 48.) Blades told Ridall that he could not find an incident report for injuries and, when quality assurance coordinator Sue Brown ("Brown") walked into the room, Widger asked Brown to help Blades look for the report. (*Id.*) Brown gave Blades an incident report to report the injuries. (*Id.*) The signed report sets forth July 26, 2014 at 1:00 p.m. as the date and time of the injury and July 30, 2014 at 4:55 p.m. at the date and time that Blades reported the injury. (D.I. 4, ex. V.) A letter dated July 30, 2014 from Blades to Mosaic requests a reasonable accommodation (light duty) for the July 26, 2014 work related injury. (*Id.*) Blades alleges that he received medical treatment through October 22, 2014 when he was medically cleared to full duty status. (D.I. 4 at ¶ 49.)

On the morning of August 1, 2014, Blades received a telephone call from Widger for them to meet at 1:00 p.m. that day. (*Id.* at ¶ 50.) That afternoon, as Blades was escorted to

5

Sipe's office, Blades handed Widger the July 30, 2014 report of incident, doctor's notes, the July 30, 2014 written request for reasonable accommodation, and a pharmacy receipt. (*Id.* at ¶ 51.) Sipe terminated Blades' employment, and explained to Blades that he was being terminated because he had been told that Blades had disrespected Susan (presumably Brown) on Monday. (*Id.*) The termination letter states, "Mosaic has made the decision to terminate your employment as a direct support associate effective August 1, 2014, due to repeated disrespectful communication and insubordination, any of which is sufficient grounds for termination." (D.I. 4, ex. W.)

Blades completed an exit interview form on August 8, 2014. (D.I. 4 at ¶ 52.) Blades alleges that he provided a declaration that the conditions of his employment were unlawfully changed because he complained internally and externally about discrimination, harassment, and retaliation. (D.I. 4 at ¶ 52.) On August 21, 2014, Blades appealed his termination, and Mosaic upheld the decision to terminate. (D.I. 4 at ¶53, exs. Y, Z.)

Count One of the amended complaint (¶¶ 1-24) alleges that: (1) Blades was discriminated against on the basis of national origin (*i.e.*, Black American) when African Americans were given preferential treatment over Black Americans; (2) he was given poor evaluations; (3) after he submitted an internal complaint regarding the disparate treatment, Blades received arbitrary and unsubstantiated writeups and another poor evaluation, all in violation of § 1983 and Title VII. Count Two (¶¶ 25-37) alleges that Blades was discriminated on the basis of national origin and sex when a promotion he sought was given to a less qualified, female African American, all in violation of § 1983, Title VII, and the DDEA. Count Three (¶¶ 38-58) alleges that: (1) Blades was wrongfully discharged in retaliation for seeking workers'

6

compensation benefits; (2) the defendants would not provide Blades a reasonable accommodation required for his disability; and (3) he was discharged in retaliation for seeking a reasonable accommodation, all in violation of 19 Del. C. § 2365, and Title I and V of the ADA. Count Four (¶¶ 59-66) alleges that: (1) the defendants breached the implied covenant of good faith and fair dealing when Blades was termination in violation of public policy;[3] (2) the defendants failed to adequately train, supervise, discipline or control the unlawful actions of the defendants; (3) again alleges that Blades was wrongfully discharged in retaliation for seeking workers' compensation benefits; (4) again alleges that the defendants would not provide Blades a reasonable accommodation; and (5) again alleges that Blades he was discharged in retaliation for seeking a reasonable accommodation, all in violation of Delaware law, § 1983, and Title VII. Blades seeks compensatory and punitive damages as well as injunctive relief.

## III. STANDARD OF REVIEW

Because Blades proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

---

[3]This claim is preempted by Delaware statutes that provide the exclusive remedy for relief. A claim for breach of the covenant of good faith and fair dealing based on at-will employment cannot survive under the public policy theory. *See E.E.O.C. v. Avecia, Inc.*, 151 F. App'x 162, 165 (3d Cir. 2005) (unpublished); *Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 333 (D. Del. 2007) (holding that recovery under breach of covenant claim based on violation of public policy for breach of at-will employment contract was precluded under Delaware Discrimination Employment Statute).

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

8

*See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

## IV. DISCUSSION

### A. 42 U.S.C. § 1983 and § 1988

The defendants move to dismiss the § 1983 claims as legally deficient. While Blades' opposes dismissal of the § 1983 claims, his response does not adequately address the issue. Counts One, Two, and Four of the amended complaint invoke § 1983. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1988 provides that the court should exercise and enforce § 1983 actions "in conformity with the laws of the United States," and only if there are no applicable laws should the court turn to state law. 42 U.S.C. § 1988(a); *see also Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 238 (3d Cir. 2014).

Here, there are no allegations that any of the defendants are state actors or that they acted under color of law. The claims fail as a matter of law. Therefore, the court will grant the motion to dismiss all claims raised pursuant to 42 U.S.C. § 1983 and § 1988.

9

### B. Employment Discrimination

#### 1. Individual Defendants

The defendants seeks dismissal of all discrimination claims raised against the individual defendants and John Does Nos. 1-10. Blades opposes by stating that he may raise a civil conspiracy claim under § 1983 and for the individual defendants' failure to intervene.

As discussed above, the amended complaint fails to state cognizable § 1983 claims. In addition, the discrimination claims raised against the individual defendants fail as a matter of law. It is well established that individuals cannot be held liable under Title VII or Title I of the ADA. *See N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010 (unpublished) (citing *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077 (3d Cir. 1996) (individual employees are not liable under Title VII); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (no individual liability for damages under Title I of the ADA)).

Although the Third Circuit has not yet decided the issue of individual liability under Title V of the ADA, other courts have concluded that there can be no individual liability under Title V when the claim is based on retaliation for the exercise of rights under Title I of the ADA. *See e.g., Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 744 (10th Cir. 1999); *Baird v. Rose*, 192 F.3d 462, 471–72 (4th Cir.1999); *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 719 (D. Del. 2008); *Douris v. Schweiker*, 229 F. Supp. 2d 391, 397 (E.D. Pa. 2002), *aff'd*, 100 F. App'x 126 (3d Cir. 2004); *see also Datto v. Harrison*, 664 F. Supp. 2d 472, 491 (E.D. Pa. 2009) (interpreting § 12203 to prohibit individual claims of liability is "appropriate in employment cases because, under § 12203(c), retaliation claims in that context apply the remedies of Title I of the ADA, which incorporates the remedies of Title VII").

10

In light of the foregoing decisions, the court is persuaded that Blades' claims under Title V of the ADA may not be maintained against the individual defendants. Accordingly, the court will grant the defendants' motion to dismiss the discrimination claims raised against the individual defendants.

### 2. Pleading Requirements for Employment Discrimination Claims

Blades raises employment discrimination claims under Title VII, the ADA, and the DDEA by reason of sex, race, national origin, and disability.[4] Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a). Similar to Title VII, the DDEA prevents discrimination by an employer on the basis of sex, race and national origin.[5] *See* 19 Del. C. § 711(a); *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 212 (3d Cir. 2015); *Schuster v. Derocili*, 775 A.2d 1029, 1033 (Del. 2001). The ADA provides that "[n]o covered entity shall discriminate against a

---

[4]In conjunction with his Title VII claims, Blades invokes the DDEA as to his sex, race and national origin claims. He did not invoke the Delaware Handicapped Persons Employment Act ("DHPEPA"), 19 Del. C. § 724(a)(2) in conjunction with his ADA claims.

[5]The Court considers the Title VII claims under both federal and state law, as the law is unsettled as to whether a plaintiff may proceed under Title VII, as well as the DDEA. *See e.g.*, *Phifer v. Sevenson Envtl. Servs., Inc.*, 619 F. App'x 153, 156 (3d Cir. 2015) (unpublished); 9 Del. C. § 714(c) ("[The plaintiff] shall elect a Delaware or federal forum to prosecute the employment discrimination cause of action so as to avoid unnecessary costs, delays and duplicative litigation. A [plaintiff] is barred by this election from filing cases in both [the Delaware] Superior Court and the federal forum."); *compare Brangman v. AstraZeneca, LP*, 952 F. Supp. 2d 710, 724 (E.D. Pa. 2013) (concluding that § 714(c) does not bar plaintiff from bringing both Title VII and DDEA claims in federal court) *with Daughtry v. Family Dollar Stores, Inc.*, 634 F. Supp. 2d 475, 483 n.13 (D. Del. 2009) (concluding that § 714(c) precludes plaintiff from pursuing relief under both Title VII and DDEA).

11

qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

*Sex/Race/National Origin Discrimination.*[6] To state claim under Title VII or the DDEA, a plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) similarly situated persons who were not members of his protected class were treated more favorably or there are other circumstances that give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Jackson v. University of Pittsburgh*, 826 F.2d 230, 233 (3d Cir. 1987). A plaintiff need not convince the court of any of these elements at the motion to dismiss stage, but must submit more than naked assertion that he suffered an adverse employment aciton because of his membership in a protected class. *See Santos v. Iron Mountain Film & Sounds*, 593 F. App'x 117, 119 (3d Cir. 2014) (unpublished).

The defendants seek dismissal of the Title VII and DDEA claims on the grounds that the claims do not meet the required pleading standards and are pled in a conclusory manner without supporting facts in asserting that the actions taken against Blades were discriminatory. The court addresses the claims as they relate to Blades' employer, Mosaic of Delaware, all other Title VII and DDEA claims having been dismissed against the individual defendants.

---

[6]Count One of the amended complaint also raises retaliation claims under Title VII and the DDEA. Blades alleges that he was disciplined and his hours reduced after he made formal internal complaint of conduct directed towards him that he perceived as discriminatory. The defendants did not move to dismiss this claim.

12

The amended complaint alleges that Blades is a member of a protected class based upon his sex, race, and national origin. Exhibits attached to the complaint indicate that Blades was qualified for the position he held. He alleges that because of his race and/or national origin his hours were cut, he was not given overtime, and he was disciplined when others were not. He alleges discrimination occurred on the basis of sex and/or national origin when he was not given a promotion he sought, he was told that Mosaic wanted a female to fill the position and the position was given to a person of the opposite sex, of another national origin, who was not as qualified.

Blades proceeds *pro se* and, therefore, the court liberally construes his claims. Blades' allegations, along with his supporting exhibits, suffice to withstand the defendants' motion to dismiss the employment discrimination claims based upon sex, race, and national origin. Therefore, the court will deny the motion to dismiss Blades' employment discrimination claims raised under Title VII and the DDEA.

*Disability Discrimination.* To state an ADA claim, an individual must show that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004). The elements for failure to accommodate under the ADA are the same except for the third prong that the employer had notice of the plaintiff's disability and failed to provide such accommodation. *Kralik v. Durbin*, 130 F.3d 76, 78 (3d Cir. 1997).

13

The defendants seek dismissal of the ADA claims on the grounds that the amended complaint merely asserts that Blades was discriminated against based upon a disability, provides no allegations how the right arm injury limited a major life activity, and contains no allegation that Blades requested a reasonable accommodation prior to the termination meeting. Again, the court addresses the claims as they relate to Blades' employer, Mosaic of Delaware, all other ADA claims having been dismissed against the individual defendants.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities . . . ; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102. Major life activities, "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(iii).

The amended complaint alleges that Mosaic knew that Blades had suffered a work related injury, through telephone messages and personally advising Mosaic personnel. In addition, exhibits to the amended complaint contain the following exhibits all dated July 30, 2014: report of incident that notified Mosaic of the work related injury; physician's note that diagnosed right rotator cuff tendinopathy, and letter to Widger requesting light duty with the notation that it was hand delivered. The defendants contend that Blades did not provide this information to Mosaic

14

until just prior to the August 1, 2014 termination meeting. The amended complaint, however, does not contain those allegations and, as the court must, it liberally construes the allegations and exhibits as indicating July 30, 2014 as the notice of the disabling injury that required light duty. Finally, the amended complaint alleges both that Blades was not provided an accommodation and that he was discharged within day(s) after notifying Mosaic of the injury and his request for a reasonable accommodation due to the injury, the timing of which give rise to the inference of disability discrimination.

The amended complaint adequately alleges ADA claims. Therefore, the court will deny the defendants' motion to dismiss those claims.

### C. Workers' Compensation Retaliation, 19 Del. C. § 2365

The amended complaint alleges that Blades was terminated after he sought an accommodation for a work related injury in violation of Delaware's Workers' Compensation Act, 19 Del. C. § 2365. The defendants move for dismissal on the grounds that Blades failed to plead facts to support his claim.

Delaware's Workers' Compensation Act protects employees who request workers' compensation benefits from retaliatory action by their employers. 19 Del. C. § 2365. Section 2365 states in relevant part, that "[i]t shall be unlawful for any employer or the duly authorized agent of any employer to discharge or to retaliate or discriminate in any manner against an employee as to the employee's employment because such employee has claimed or attempted to claim workers' compensation benefits from such employer." In order to establish a *prima facie* case for retaliation, a plaintiff must show that: (1) he exercised his rights under the Workers' Compensation Act; (2) defendant took an adverse employment action against him; and (3) there

15

was a causal connection between her exercise of rights and the adverse employment action. *See Santora v. Red Clay Consol. School Dist.*, 901 F. Supp. 2d 482, 491 (D. Del. 2012), *aff'd*, 580 F. App'x 59 (3d Cir. 2014) (unpublished) (noting that an employee's request for workers' compensation benefits "is precisely the activity protected by § 2365").

A plaintiff is not required to meet the evidentiary standard of establishing a *prima facie* case in order to survive a Rule 12(b)(6). There are no allegations that Blades formally filed a workers' compensation claim. He did, however, make a request for a light duty assignment due to a work related injury. The statute provides that an employer may not retaliate against an employee "because such employee has claimed or attempted to claim workers' compensation benefits from such employer." 19 Del. C. § 2365. For purposes of a Rule 12(b)(6) motion, the court assumes, without deciding, that Blades meets the first prong to state a retaliation claim under § 2365. The defendants move for dismissal for similar reasons as those raised in seeking dismissal of the ADA claims. In light of their position, and relying upon its previous ADA analysis, the court will deny the motion to dismiss the workers' compensation retaliation claim. *See* ¶ IV.B.2.

## V. CONCLUSION

For the above reasons, the court will grant in part and deny in part the defendants' motion to dismiss. (D.I. 13.)

An appropriate order will be issued.

_____, 2017
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE

16